1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

9  DOUGLAS WRAY,                          CV F 06-00528 OWW DLB HC

10                Petitioner,            FINDINGS AND RECOMMENDATION
                                         REGARDING PETITION FOR WRIT OF
11      v.                               HABEAS CORPUS

12                                       [Doc. 1]
    KEN CLARKE, WARDEN, et.al.,
13
                Respondents.
14  _____/

15
16      Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

17  pursuant to 28 U.S.C. § 2254.

18                              BACKGROUND

19      Petitioner is in the custody of the California Department of Corrections and

20  Rehabilitation, following a 1980 conviction in the Los Angeles County Superior Court for two

21  counts of kidnap for robbery (Cal. Penal Code § 209), three counts of robbery (Cal. Penal Code §

22  211), two counts of rape (Cal. Penal Code § 261(2)(3)), and two counts of oral copulation (Cal.

23  Penal Code § 288(a)(c).)[1] (Exhibit A, Judgment, Los Angeles County, attached to Answer.)

24  Petitioner was sentenced to a term of life with the possibility of parole. (Id.) The life term was

25  ordered to be served consecutively to a sentence received out of Santa Cruz County, with the

26
27      [1] In his traverse, Petitioner contends that pursuant to his plea of guilty he was only convicted of one count
    of kidnap for robbery. (Traverse, at 1.) Petitioner's contention is without merit, as the abstract of judgment reflects
28  that Petitioner was convicted of the nine counts outlined above, with the sentences on Counts Two through Nine to
    run concurrently with Count One. (Exhibit A, Judgment, attached to Answer.)

1   Santa Cruz sentence to be served first.  (Id.)  Petitioner's life term began on May 7, 1990.

2   (Exhibit B, CDC 112 Chronological History, entry date April 28, 1997, attached to Answer.)

3       In the instant federal petition, Petitioner does not challenge the underlying conviction,

4   rather, he contends that the Board of Parole Hearings' (BPH) decision finding him unsuitable for

5   parole at his October 9, 2003, hearing was not supported by the evidence.

6       Petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior

7   Court challenging the BPH's decision.  The petition was denied because Petitioner failed to meet

8   his burden proving the factual allegations that served as the basis for his request for relief.

9   (Exhibit G, attached to Answer.)

10       Petitioner next filed a petition for writ of habeas corpus in the California Court of Appeal,

11   Second Appellate District.  The petition was denied on April 13, 2005.  (Exhibit H, attached to

12   Answer.)

13       Petitioner filed a petition for writ of habeas corpus in the California Supreme Court.  The

14   petition was denied on February 1, 2006.  (Exhibit I, attached to Answer.)

15       Petitioner filed the instant petition for writ of habeas corpus on March 20, 2006.

16   Respondent filed an answer to petition on October 23, 2006, and Petitioner filed a traverse on

17   November 13, 2006.  (Court Docs. 12, 13.)

18                      BACKGROUND OF FACTS[2]

19       On July 14, 1979, Petitioner went to the Sunshine Car Company pretending to be

20   interested in purchasing a car.  Petitioner went for a test drive with a sixty-three year old Dick

21   Crabtree.  During the test drive, Petitioner pulled out a .38 caliber revolver and demanded the

22   victim's money and wallet.  The victim gave Petitioner $230.00.  As Petitioner took the money,

23   he shot the victim causing injury to both of his wrists.  Petitioner fled in the car that he was test

24   driving.

25       Then on July 17, 1979, driving the car that he had stolen just a few days prior, Petitioner

26   approached a fourteen-year-old girl, who was sitting on a corner street waiting for a bus, pointed

27

28       [2] This statement of facts is derived from the Probation Officer's Reports, attached as Exhibits C and E to Answer.

2

a gun at her and demanded that she get into the car or he would kill her.  As Petitioner drove to a restricted fire road, he ordered her to get undressed and to put her clothes in the back seat.  He then forced her to orally copulate him and then to have intercourse with him.  Petitioner then ordered the girl to put on her shoes and get out of the car.  As she did so, the girl grabbed her underclothes and attempted to get her purse and dress.  However, Petitioner pulled the dress away from her and sped off.  The girl put on her underclothes and was later picked up by someone who took her to the police.

On that same day, Petitioner kidnaped another young girl at gunpoint and raped her.  This victim, a nineteen-year-old, was walking when Petitioner pulled up next to her and used a gun to force her into the car.  Petitioner then ordered her to take off her clothes and put on one of his shirts.  Petitioner forced the victim to orally copulate him, then he took off all his clothes and had intercourse with her.  Petitioner also forced her to take off all her jewelry and give it to him.  Petitioner forced her out of the car naked.

Petitioner's prior 1979 conviction out of Santa Cruz County was for kidnaping (Cal. Penal Code § 207), rape (Cal. Penal Code § 261(2)(3)), and oral copulation (Cal. Penal Code § 288a(c)).  He was sentenced to a term of fourteen years and four months, which were to be served before the life term began.  (Exhibit D, Abstract of Judgment, Santa Cruz County, attached to Answer.)  The circumstances giving rise to this conviction were a similar continuation of the crime spree that began in Los Angeles County.

On August 21, 1979, Petitioner kidnaped and repeatedly raped another victim.  Petitioner picked up victim and her boyfriend as they were hitchhiking to Santa Cruz.  When they arrived to Santa Cruz, the victim's boyfriend got out of the car.  Petitioner pointed a gun at him and hold him to "get the hell out of here punk."  Petitioner then drove the victim to a secluded area where he forced her to remove her clothing and have intercourse with him.  Petitioner then forced her to orally copulate him and again to have intercourse.

On August 22, 1979, Petitioner picked up another girl while she was waiting for a bus. Petitioner offered to give her a ride which she accepted.  Petitioner then pulled out a gun and ordered her to take off her clothes and put them in the back seat.  The girl argued with Petitioner

and pushed the gun away.  When Petitioner momentarily looked away, the girl reached over and put the car in park.  She was able to grab the gun from Petitioner's hand and throw it out the window.  After the car came to a stop, the girl jumped out and ran onto the highway yelling for help.  Several cars stopped to assist her.  Petitioner was taken into custody on August 22, 1979.[3]

DISCUSSION

I.     Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death  Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless

---

[3] Petitioner was first convicted and sentenced in Santa Cruz County and then transported back to Los Angeles County where he had a hold based on the crimes occurring in July.  Petitioner was sentenced to the life term in Los Angeles County.

4

1   the adjudication of the claim "resulted in a decision that was contrary to, or involved an

2   unreasonable application of, clearly established Federal law, as determined by the Supreme Court

3   of the United States" or "resulted in a decision that was based on an unreasonable determination

4   of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.

5   § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

6       As a threshold matter, this Court must "first decide what constitutes 'clearly established

7   Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

8   *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this

9   Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as

10  of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other

11  words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or

12  principles set forth by the Supreme Court at the time the state court renders its decision." Id.

13      Finally, this Court must consider whether the state court's decision was "contrary to, or

14  involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at

15  72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may

16  grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]

17  Court on a question of law or if the state court decides a case differently than [the] Court has on a

18  set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S.

19  at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the

20  state court identifies the correct governing legal principle from [the] Court's decisions but

21  unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at

22  413.

23      "[A] federal court may not issue the writ simply because the court concludes in its

24  independent judgment that the relevant state court decision applied clearly established federal

25  law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.

26  A federal habeas court making the "unreasonable application" inquiry should ask whether the

27  state court's application of clearly established federal law was "objectively unreasonable." Id. at

28  409.

1    Petitioner has the burden of establishing that the decision of the state court is contrary to

2 or involved an unreasonable application of United States Supreme Court precedent. Baylor v.

3 Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the

4 states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

5 state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th

6 Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

7    AEDPA requires that we give considerable deference to state court decisions. The state

8 court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's

9 interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), cert. denied,

10 537 U.S. 859 (2002), rehearing denied, 537 U.S. 1149 (2003).

11 II.    Review of Claims

12    A parole release determination is not subject to all of the due process protections of an

13 adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see

14 also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979)

15 (explaining that due process is flexible and calls for procedural protections that particular

16 situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution,

17 the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated,

18 even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of

19 Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process

20 to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing,

21 Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard,"

22 Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why

23 "he falls short of qualifying for parole." Id.

24    "In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court further held that

25 'revocation of good time does not comport with 'the minimum requirements of procedural due

26 process,' unless the findings of the prison disciplinary board are supported by some evidence in

27 the record.'  472 U.S. 445, 454 (1985), quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)."

28 Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (emphasis added).

1    Although Hill involved the accumulation of good time credits, the same standard applies to

2    parole, as both situations "directly affect the duration of the prison term."  Id., citing Jancsek v.

3    Oregon Bd. of Parole, 833 F.2d at 1390; McQuillion v. Duncan, 306 F.3d 895, 904 (9th

4    Cir.2002), citing Superintendent v. Hill, 472 U.S. at 456; Powell v. Gomez, 33 F.3d 39, 40 (9th

5    Cir.1994), citing Perveler v. Estelle, 974 F.2d 1132, 1134 (9th Cir.1992). "The 'some evidence'

6    standard is minimally stringent," and a decision will be upheld if there is any evidence in the

7    record that could support the conclusion reached by the factfinder. Powell, 33 F.3d at 40, citing

8    Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987); Toussaint v. McCarthy, 801 F.2d 1080, 1105

9    (9th Cir.1986). However, "the evidence underlying the board's decision must have some indicia

10   of reliability." Jancsek, 833 F.2d at 1390; see also Perveler, 974 F.2d at 1134.  In determining

11   whether the "some evidence" standard is met, the Court need not examine the entire record,

12   independently assess the credibility of witnesses, or re-weigh the evidence.  Sass, 461 F.3d at

13   1128, Toussaint, 801 F.2d at 1105..

14        With regard to the procedural protections outlined in Greenholtz, as Respondent submits,

15   Petitioner was provided all that is required.  Petitioner was provided with advance notice of the

16   hearing, an opportunity to submit materials for the Board's consideration, an opportunity to be

17   heard during the hearing, representation by his attorney, and a written decision explaining the

18   reasons that parole was denied.  Petitioner, however, contends the Board's decision was not

19   supported by the evidence and the BPH's "gravity" regulations are unconstitutionally vague.

20        In denying Petitioner parole at the October 9, 2003, hearing, the BPH relied on several

21   factors including Petitioner's commitment offense, his unstable social history, his history of prior

22   criminality, his lack of self-help therapy and programming, his inadequate parole plans, and the

23   district attorney's opposition to parole, in denying parole.  (Exhibit F, at 52-59, attached to

24   Answer.)  The state courts' determination of this issue was not contrary to, or an unreasonable

25   application of, clearly established Supreme Court precedent.

26        The first factor the BPH relied on was the commitment offenses were carried out in a

27   dispassionate and calculated manner, there were multiple victims, and the motive was

28   inexplicable in relation to the offense.  (Exhibit F, 52-53, 57-58; Cal.Code Regs. tit. 15, §

1  2402(c)(1)(E).)[4]  As noted by the BPH, Petitioner "was armed with a deadly weapon, and he used

2  it to threaten the victims, threaten the victims' lives, if they did not follow through with these

3  sexual assaults that the prisoner put on them." (Id. at 52-53.)  In addition, Petitioner attacked and

4  shot a car dealer in the wrist.  "The offenses were carried out in manners which demonstrate an

5  exceptionally insensitive disregard for human sufferings." (Id. at 53.)  "Some evidence" supports

6  the BPH's finding.  The BPH identified more than the minimum elements of kidnaping for rape

7  when it determined that Petitioner had threatened the victims with a gun to the victims while

8  raping them.  In addition, Petitioner attacked and shot a car dealer during a robbery, as he was

9  taking the money from the victim.  It was likely only by happenstance that the victim was not

10  killed.  Accordingly, the BPH's finding is supported by "some evidence" and Petitioner's claim

11  to the contrary is not persuasive.

12      Under California law, an inexplicable motive is "one that is unexplained or unintelligible,

13  as where the commitment offense does not appear to be related to the conduct of the victim and

14  has not other discernable purpose." In re Scott, 119 Cal.App.4th 871, 892-893 (2004).  In

15  finding that the motive was trivial in relationship to the offense, the BPH stated, "not only should

16  they not have happened, but they happened multiple times." (Id. at 53.)  The BPH further stated,

17  "[t]hese conclusions were drawn from the Statement of Facts, wherein [Petitioner] armed himself

18  with a handgun and committed a series of crimes involving multiple victims, as I mentioned, in

19  separate incidents; a crime spree, if you will, that included robberies, kidnap, sexual assaults,

20  including rape and oral copulation.  At least one of the victims was a 14 year old young girl."

21  (Id.)  Thus, "some evidence" supports the BPH's finding that the motive was trivial in relation to

22

23      [4] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c)(1) sets forth circumstances
tending to demonstrate unsuitability for parole regarding the committed offense.  The factors to be considered
24  include:
        (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
25      (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style
        murder.
26      (C) The victim was abused, defiled or mutilated during or after the offense.
        (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for
27      human suffering.
        (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

28  15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

1   the offense.

2       The BPH further found that Petitioner has a record of violent, assaultive behavior, an

3   escalating pattern of criminal conduct and violence, including theft, petty theft, burglary, forgery

4   of credit cards, receiving stolen property, assault with to commit rape, assault with a deadly

5   weapon, unlawful taking of a vehicle, rape with force or threat, as well as oral copulation. (Id. at

6   53-54.) Section 2402(b) of California Code of Regulations, Title 15, allows the BPH to consider

7   "past criminal history, including involvement in other criminal misconduct which is reliably

8   documented." In addition, section 2402(b) states that "[a]ll relevant, reliable information

9   available to the panel shall be considered in determining suitability for parole." Thus, it was not

10  improper for the BPH to consider this evidence in its determination.

11      The BPH stated that Petitioner had an unstable social history which may be properly

12  considered as a circumstance tending to indicate unsuitability for parole. See 15 C.C.R. §

13  2402(c)(3). Here, the BPH cited that he came from a dysfunctional family setting and dropped

14  out of school at an early age. "He was having problems in school, being suspended from school,

15  being caught stealing from school lockers. Subsequently, he dropped out of school." (Exhibit F,

16  at 54.)

17      The BPH also found that Petitioner has "not sufficiently participated in beneficial self-

18  help and therapy programming at his time, to better understand the causative factors; what caused

19  the prisoner to have this vicious lifestyle where - - a cowardice lifestyle, that he would take out

20  and attack young women and kidnap and rob them and sexually assault them. The prisoner has

21  failed to demonstrate evidence of positive change." (Id. at 54-55.) This finding is supported by

22  the evidence. The BPH noted that while incarcerated Petitioner had a total of twelve instances of

23  misconduct while incarcerated. (Id. at 55.) As stated by the BPH, Petitioner "needs therapy and

24  self-help in order to face, discuss, understand, and cope with stress in a non-destructive manner;

25  what caused this prisoner to have a lifestyle so notorious, if you will, where he would take and

26  kidnap and rob and rape young women, as well as shooting another - - an elderly man." (Id. at

27  56.) Given the gravity of Petitioner's prior criminal history and the crime spree he engaged in

28  during 1979, coupled with Petitioner's unstable social history, support the BPH's conclusion that

1    Petitioner needs further self-help therapy.

2          The BPH further stated that Petitioner lacked realistic and viable parole plans in the last

3    county of residence.  Petitioner did not provide any viable, acceptable employment plan.  (Id. at

4    55.)  As Petitioner acknowledged at the hearing, he did not have any plans for Los Angeles

5    County.  (Id. at 17.)  In his traverse, Petitioner contends that the BPH ignored a letter

6    demonstrated that he had employment and a place to live, and cites Exhibit C.  (Traverse, at 3.)

7    However, there is no Exhibit C, attached to his traverse.  Finally, the BPH considered the District

8    Attorney's opposition to parole.  This was properly considered pursuant to California Penal Code

9    section 3042(a) and (f)(3), and 15 C.C.R. § 2402(b).

10         In addition, Petitioner's contention that his sentence exceeds the uniform matrix term of

11   between eight to twelve years, is without merit.  Title 15, of the California Administrative Code,

12   section 2403(a) applies only to inmates who have been found suitable for parole.  15 Cal. Admin.

13   Code § 2403(a).  Additionally, in Dannenberg, the California Supreme Court held that the Board

14   is not required to refer to the sentencing matrices or other crimes of the same type in determining

15   whether the prisoner is suitable for parole.  In re Dannenberg, 34 Cal.4th 1061, 1091 (2005).

16         Petitioner's contention that the BPH improperly relied on his commitment offense, is

17   without merit.  The Ninth Circuit has held that serious questions involving a prisoner's liberty

18   interest in parole would be raised if the Board continued to rely solely on the gravity of the

19   offense and conduct prior to imprisonment to justify denial of parole, despite a prisoner's

20   continuing demonstration of exemplary behavior and evidence of rehabilitation. Biggs, 334 F.3d

21   at 916.  As discussed above, however, the circumstances of the offense, while significant, were

22   not the only reasons for the Board's decision.  Pursuant to 15 Cal. Code Regs. § 2402, the Board

23   must consider "[a]ll relevant, reliable information available to the panel." In making its

24   determination, the Board "shall include the circumstances of the prisoner's social history; past

25   and present mental state; past criminal history, including involvement in other criminal

26   misconduct which is reliably documented; the base and other commitment offenses, including

27   behavior before, during and after the crime; past and present attitude toward the crime; any

28   conditions of treatment or control, including the use of special conditions under which the

1    prisoner may safely be released to the community; and any other information which bears on the

2    prisoner's suitability for release." Id. It is apparent the BPH did so in this case and carefully

3    balanced and assessed the various factors. Those findings were supported by at least "some

4    evidence."

5         On balance, the BPH's finding is supported by "some evidence" and it cannot be said that

6    the state court's resolution of Petitioner's claim "resulted in a decision that was contrary to, or

7    involved an unreasonable application of, clearly established Federal law, as determined by the

8    Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable

9    determination of the facts in light of the evidence before the state court."

10        With regard to Petitioner's claim that the "gravity" regulations used to find him

11   unsuitable for parole are unconstitutionally vague causing a fundamentally unfair result, is

12   without merit.  First, Respondent argues that this claim is not exhausted because it was not

13   presented to the California Supreme Court for review.

14        A petitioner who is in state custody and wishes to collaterally challenge his conviction by

15   a petition for writ of habeas corpus must exhaust state judicial remedies.  28 U.S.C. § 2254(b)(1).

16   The exhaustion doctrine is based on comity to the state court and gives the state court the initial

17   opportunity to correct the state's alleged constitutional deprivations.  Coleman v. Thompson, 501

18   U.S. 722, 731, 111 S.Ct. 2546, 2554-55 (1991); Rose v. Lundy, 455 U.S. 509, 518, 102 S.Ct.

19   1198, 1203 (1982); Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th Cir. 1988).

20        A petitioner can satisfy the exhaustion requirement by providing the highest state court

21   with a full and fair opportunity to consider each claim before presenting it to the federal court.

22   Picard v. Connor, 404 U.S. 270, 276, 92 S.Ct. 509, 512 (1971); Johnson v. Zenon, 88 F.3d 828,

23   829 (9th Cir. 1996).  A federal court will find that the highest state court was given a full and fair

24   opportunity to hear a claim if the petitioner has presented the highest state court with the claim's

25   factual and legal basis. Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888 (1995) (legal

26   basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis).

27   Additionally, the petitioner must have specifically told the state court that he was raising a

28   federal constitutional claim.  Duncan, 513 U.S. at 365-66, 115 S.Ct. at 888; Keating v. Hood, 133

F.3d 1240, 1241 (9th Cir.1998).  For example, if a petitioner wishes to claim that the trial court violated his due process rights "he must say so, not only in federal court but in state court." Duncan, 513 U.S. at 366, 115 S.Ct. at 888.  A general appeal to a constitutional guarantee is insufficient to present the "substance" of such a federal claim to a state court.  See Anderson v. Harless, 459 U.S. 4, 7, 103 S.Ct. 276 (1982) (Exhaustion requirement not satisfied circumstance that the "due process ramifications" of an argument might be "self-evident."); Gray v. Netherland, 518 U.S. 152, 162-63, 116 S.Ct. 1074 (1996) ("a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.").

Additionally, the petitioner must have specifically told the state court that he was raising a federal constitutional claim.  Duncan, 513 U.S. at 365-66; Lyons v. Crawford, 232 F.3d 666, 669 (9th Cir.2000), amended, 247 F.3d 904 (2001); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.1999); Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir.1998).

Here, as Respondent correctly argues the only claim that Petitioner presented to the California Supreme Court was his claim that the BPH's decision was not supported by "some evidence" in violation of his due process rights.  (See Exhibit I, attached to Answer.)  Petitioner is not precluded from exhausting this claim in the state courts, as the California Supreme Court has original jurisdiction to review petitions for writs of habeas corpus.  Although the Court has the authority to hold the petition in abeyance, as Respondent submits, Petitioner has not presented good cause for not exhausting this claim, and in any event, as discussed infra, the claim is clearly without merit, and exhaustion would be futile.  See Rhines v. Weber, 544 U.S. 269, 277 (2005).

Notwithstanding Petitioner's failure to exhaust this claim, the Court will recommend that it be denied as it is clearly without merit.  See 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005) (a federal court considering a habeas petition may deny an unexhausted claim on the merits when it is perfectly clear that the claim is not "colorable").

1    As Respondent submits, Petitioner does not cite to the specific regulation that he believes

2 is unconstitutionally vague, it is apparent that he contends the regulation which provides that the

3 Board may consider an inmate's commitment offense as a circumstance tending to show

4 unsuitability for parole if the Board finds it was "especially heinous, atrocious, or cruel."  Cal.

5 Code Regs. tit. 15, § 2402(c)(1).

6    In order for a regulation to survive a vagueness challenge, the regulation must be precise

7 enough to guide the Board and to prevent arbitrary and discriminatory enforcement.  See

8 Greenholtz, 442 U.S. 1; Maynard v. Cartwright, 486 U.S. 356, 361 (1988).  A statute that may be

9 facially vague may be considered valid by limiting constructions that narrow the scope of the

10 statute and channels the discretion of the decision-maker.  See Proffitt v. Florida, 428 U.S. 242,

11 255-56 (1976).  Here, the Board's regulations limit the terms "especially heinous, atrocious, or

12 cruel" with standards based on evidence that may be present in individual cases.  For instance, a

13 crime may be considered "especially heinous, atrocious, or cruel" if multiple victims are

14 attacked, or the victim was abused, defiled, or mutilated.  Cal. Code Regs. tit. 15, §

15 2502(c)(1)(A) - (E).  Accordingly, because the regulations are precise enough to provide

16 guidance to the Board and are not arbitrary and discriminatory, Petitioner's claim is clearly

17 without merit.

18                                 RECOMMENDATION

19    Based on the foregoing, it is HEREBY RECOMMENDED that:

20    1.    The instant petition for writ of habeas corpus be DENIED; and

21    2.    The Clerk of Court be directed to enter judgment in favor of Respondent.

22    This Findings and Recommendation is submitted to the assigned United States District

23 Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of

24 the Local Rules of Practice for the United States District Court, Eastern District of California.

25 Within thirty (30) days after being served with a copy, any party may file written objections with

26 the court and serve a copy on all parties.  Such a document should be captioned "Objections to

27 Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served

28 and filed within ten (10) court days (plus three days if served by mail) after service of the

1  objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §

2  636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time

3  may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th

4  Cir. 1991).

5      IT IS SO ORDERED.

6  **Dated:**   **September 24, 2007**          _____**/s/ Dennis L. Beck**_____
                                          UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28